argument is 162636 Katzin v. United States. Mr. Gray, whenever you're ready. Good morning. May it please the Court, my name is Michael Gray and I'm here on behalf of the United States. The Court of Federal Claims concluded that the statute of limitations hadn't run and that the United States affected a permanent physical taking of 10.01 acres of the plaintiff's property by sending a fax restating the United States' longstanding assertion of ownership of a coastal strip and a 2.25-acre gun mount site. That judgment should be reversed on any one of three grounds. First, the six-year statute of limitations bars the plaintiff's claim because the takings claim here accrued no later than 1987 when the plaintiff... So could I... I understand what your argument is. So can I take a piece of meal before you give us the whole summary? This is just a factual question. I thought the stuff in 1986 in the markers had to do with the gun mount. The property we seem to be talking about now, whether or not it's a valid allegation of a taking, is much broader than that. It includes the peninsula and maybe parcel four which is even broader than the peninsula. So even if you were right that that was a notice, why would that notice extend to anything beyond the gun mount? I think there's... I have two responses to that. The first is that the claim that they brought here was that the actions of the United States in sending the fax in 2006 was the source of the taking. If you look at that fax, which is page 3115 of the appendix, the I'm including the 1887 survey map. I'm including it from a map that shows property 1E, which is the coastal strip, and property 1F, which is the gun mount site. And I'm including the federal register notice about that. And so the source of the taking that they claim pertained only to those 2.25 acres. And so that claim is barred. Now what they said was by sending that fax, you've taken the entire property. And the Court of Federal Claims said, no, I don't think it's the entire property, I think it's 10 acres. But the source... They're still all broader than just the gun mount. It is, but the source of the claim pertained only to the gun mount. So it's the claim that's barred, I think, because that's what they said affected the taking. And the survey is exactly the same thing that the fax pertained to. So the survey and marking of the gun mount site... Discussion about the fax and how it was construed and how it affected the potential purchasers and stuff, they were only talking about the 2.5 acre gun mount? If you look at the fax, again, it says, I'm about to fax you a copy of the portion of the original 1887 subdivision map, a tracing of that map with Fish and Wildlife Parcel Service added, 1E is the maritime zone, 1F is the old gun mount site. So is it clear to you that the government has no claim, title of otherwise, or no argument or dispute with respect to the plaintiffs on anything beyond the gun mount? I think that there was some evidence that in the 1940s, the Navy had... There's a concrete marker that is broader, I think, than the gun mount site. But all the Navy transferred to the Fish and Wildlife Service was the coastal strip and the gun mount site. Are you saying the Fish and Wildlife Service had none of the rights that they asserted when they wrote to the potential purchaser? No, I'm not saying that. I'm saying that what they wrote to the potential purchaser was only the rights that they asserted were to the 2.25 acre gun mount site and to the coastal strip. There was a map included... And no other rights? No rights to the peninsula? No rights to... They certainly did not assert in this fax, again, and you can look at it, any rights to the peninsula. I know you're trying to answer my question, but maybe a yes or no would have been helpful. Is it the government's view currently and at all times that they are not asserting any right to any property other than the gun mount? I think that at this point, that's correct because what the Navy transferred to the Fish and Wildlife Service, and I don't want to say just the gun mount site because also the coastal strip, which is undisputed, but which is property 1E on there. And was that included, was the coastal strip part of what went down in the 80s too? Yes, and maybe it's helpful to talk about that a little bit, but ultimately, even if you concluded that the statute of limitations barred only a claim to the gun mount site, I don't think it would matter because I think it's clear that sending the fax, even if it did state some broader claim, at that point, you really are left with no taking because there's no other indicia of any sort of physical occupation or its functional equivalent. But I think if you look at that fax, you'll see it's not stating a claim to anything more than the coastal strip and the gun mount. I know we weren't ... Happily, this appeal didn't dispute anything with respect to damages, and there's a number with respect to damages. So that number was purely based on the value of the gun mount and not a parcel for and the parcel for. What the Court of Federal Claims concluded ... The initial complaint here said, by sending this fax, you've taken the entire property, some 70-some acres. What the Court of Federal Claims concluded was that, well, there's some ambiguity, and we don't know exactly where the 2.25 acres is on the peninsula. There's some indications in the record that maybe the claim is broader, and so I'm going to find that the government's taken the full peninsula, and that's what the value was based on, the full peninsula. What I'm saying is that was incorrect. But the government has prevented sale or transfer of the peninsula with that letter from Fish and Wildlife. So are you now saying that that was a mistake, what they said, and the government is disclaiming any rights other than wherever that 2.5 acres may be placed? I'm saying that the Court of Federal Claims was mistaken in concluding that we had ... I'm asking for the government's position. Our view is that the 2.25 acres and the coastal strip, which is not the entire peninsula, is what was asserted in this fax. And that there is no asserted right, no clout on the title, in which case it would have to be clarified, as to anything except the gun mount and the coastal strip? I believe that's correct, based on this. The entire ... Well, now that this is asserted in the Court of Federal Claims, the problem is this presumed property owner was prevented from the transfer of property. And as far as the paper record looks so far, I can ... it's clear enough that some potential purchaser might be deterred from spending several million dollars in this context. Well, perhaps I'll ... maybe I'll address whether there was a taking at all here, which would get us out of this statute of limitations box and where it applies. Because I don't think it ultimately matters, because I don't think there could be a taking based on that ground. Because what the fax says is exactly what the government has maintained since 1903, that we have rights to this coastal strip and to the gun mount site. Why do they write to the purchaser and say, look what you're getting into? Well, that's not what happened. The purchaser sent an email to the Fish and Wildlife Service that says, I would greatly appreciate any information you could provide with respect to Parcel 4. Of course. And we responded to the purchaser with a Federal Register Notice, which of course was a public notice already that the Fish and Wildlife Service had. The Federal Register Notice from 1982. So the purchase, the idea that the Fish and Wildlife Service did anything here that affected the sale, I think is wrong. Because all the Fish and Wildlife Service did was send what was already a public notice and of course a Federal Register Notice. Well, one thing that's clear is that there is a cloud somewhere. One can understand why the Court of Federal Claims appreciated that since the government has declined to resolve that cloud, that they're stuck, they can't sell the property. It was in which case, due to government action, if you go back to whenever, there may be a question as to when that action occurred. But it is obviously, it's ongoing because of the response of the Fish and Wildlife Service. Well, if the facts itself and what was asserted in the facts is enough, then that's the same exact assertion that's been made at least since 1982 in the Federal Register Notice. And so that would clearly bar any claim. But I think that really adopts far too broad a standard for what was asserted here, which is a physical taking. There was never a regulatory taking pressed in this case, is that right? That's correct. This was always a physical taking case and the only thing that the United States has done is assert its ownership. And I think it's clear that you need something more than a mere assertion of ownership. You can have an assertion of ownership for a Quiet Title Act case, but not for a takings case. What about the Yates case? I mean, it's troubling on you. There's a footnote in your brief that says, well, you may have to repudiate Yates because it's inconsistent with subsequent Federal Circuit decisions. As I'm sure you know, that's not the way it works. A panel cannot repudiate an en banc earlier decision. They would have to take it en banc. And even if subsequent cases can be construed as being inconsistent, we go back to the first as being the guiding principle. I don't quarrel with any of that, but I'll say two things about Yates. The first is, I think the whole line of cases from that time period, Yates in the Borges case and Yuba Goldfields, they all sort of predate what this court has now said is the takings. And you see, in the Borges case in particular, you see a site to Penn Central saying, well, you don't have to have physical occupation, and then going on with a physical case. So I think that not only this court's case law, but the Supreme Court's case law has sort of moved on. And when you look at those cases in that context, and now we're clearly in a physical takings context here, it's not enough. But the second thing is, even in Yates, you had more than you have here. Because in Yates, this was the Everglades case where they had sold the property to two different entities, one of which was the United States. And the United States had filed the deed and had sent a letter saying, this is our land because we bought it and filed the deed, which I think is much more of an official filing of a deed. You had a congressional laxing. There's no counterpart here. There's no filing of a deed by the government. All there is, is this cloud. And what would be very helpful to me is to understand that you're saying is that the government has the two and a half, the rights to the two and a half acres. There may be uncertainty as to where those two and a half acres are, but no other rights in this property, this peninsula. I think based on this record, that that's all at this point that we've claimed and that's all the Fish and Wildlife Service. The debate, as before the federal claims, is trying to clarify and still before us. I'm not interested in hedging as to maybe we'll say something else in a quiet title action or whatever, but to understand if the government's position is, yes, there was the motion from the Spanish ownership, there is the gun mount, which doesn't seem to be in dispute as far as ownership rights are concerned. There may be some argument as to where it's located, but that it's limited to the two and a half acres. And as to the rest of this debate, going back in history, there is no assertion of ownership by the United States. At this point, we have not, in this case, asserted that ownership. In this case, that's the issue that was raised in this case, is the rights, because this asserted, purported property owner was prevented from transferring the property. Prevented from transferring his entire property, it was only the peninsula. Well, the property, except for the two and a half acres. Much of this confusion, I think, is a product of the way the case was brought and tried, where you have this physical takings claim that's based on a claim to two acres that you say you physically took the entire property, and then the Court of Federal Claims says, well, I'm going to cut it back some. That's all based, there's definitely some, there are definitely historical documents in the record where the United States has at times said the 10 acre property, but that's not what was transferred to the Fish and Wildlife Service, and that's not what we're claiming here. So, the Fish and Wildlife Service was in error, was incorrect, when they told the purchaser that there's a problem with his property? No, what I'm saying is the problem that the Fish and Wildlife Service identified, and it's right there in the tract, or in the facts, is tract 1E is a maritime zone, and 1F is an old gun mount site, purchased by the Navy in 1903. That's all they asserted. That wasn't incorrect. What was incorrect was the Court of Federal Claims saying that it went farther. Now, we didn't appeal. We could have, I think, appealed on the grounds that the Court of Federal Claims had a broader taking, found a broader taking than we did based on this fact. We didn't appeal on that ground, because this is a National Wildlife Refuge. If we were to lose the case entirely, I think the Fish and Wildlife Service would be happy to have the land, but we've not claimed that land yet. I don't understand what you just said. Are you saying that in some sort of quiet title action, the government is going to come back in and say, no, it's ours? I don't believe we would ... Well, I don't want to restrict whatever happens in a future quiet title action. I don't think that's what we would do, but there may be a condemnation action that we could bring and just ... No, it may be that the Court of Federal Claims heard the same double talk that we're hearing and decided to put an end to it. I'm really not attempting to give any double talk. I am just relying on what the record is, and I would encourage the court to take its own look at what this fact says, which is restricted ... The only taking they found was based on the facts, and the facts is restricted to the 2.25 acres and the coastal strip. You're telling us that if ... Let's assume you were to prevail on that. Yes. If the government is not going to come back, if they file another takings claim with respect to the rest of the area five years from now, you're not going to assert where your statute of limitations is run because that so-called taking of everything was already known to you? I think we would ... I guess it depends on what the actions are that they claim takes the land. I don't know. I'm hesitant to speculate about what we might say. I guess it depends on what they identify and what we've had. In order to agree with you on this division, like this was the only thing at stake and going back to the 1980s, there was fact-finding by the Court of Federal Claims, right, that there was a lot of ambiguity in terms of what the government was saying in terms of survey  How do we dislodge ... Well, what the ... I'm glad you braced that because I do want to address it because what the Court of Federal Claims said in a footnote without a citation was perhaps the posting of these signs could have related only to the maritime zone, but that's inconsistent with the Court of Federal Claims' own findings. If you look at page 23 of the appendix, the Court of Federal Claims says, .606 forms one of the points of the gun mount site. Then the Court of Federal Claims says that the Fish and Wildlife Service employee found marker and sign at .606. He testified to that, page 1,000, 1,001 of the appendix, that he found the marker and sign at .606. That sign says, unauthorized entry prohibited. Even in the Court of Federal Claims' own fact-finding, there's findings of fact that there was a sign posted at one of the points of the gun mount site. I think it is clearly erroneous for the court to then later say it could have related only to the maritime zone. Let me bring you to the broader question of takings, leaving aside what Parcel were talking about, which is the notion of the non-possessory physical taking. We got to do line drawing in CARE, even under your theory, so I'm trying to discern where the line would be drawn. If the government tells all prospective purchasers of a parcel of property, if it goes to them and says, don't buy us, because we have a pretty good, what we think is a very strong title claim to this property, would that be sufficient to be a non-possessory taking? I don't think so. That's what happened when they published a Federal Register notice. That's essentially notice to the world that the United States claims the property. They published a Federal Register notice with maps that showed this is the property we're claiming. I don't think that that mere assertion of title is enough. I think under this court's case law, like Washoe County, you need some physical occupation or its functional equivalent of a practical ouster. If it's a practical matter, one could fairly conclude on the record, or it's even not disputed, but that when the government goes to purchasers and tells them, we have a very strong claim to the entire parcel, that it effectively will preclude the sale of the parcel and detract or obviate any value to that parcel for purposes of the owner. I'm not sure that that's a fair assumption, because even on the facts here, which I don't think is necessary for the court to get to, but you have Mr. Colon and the entity, Jim, who were both willing to proceed with the sale, even with knowledge of the United States claim here. I don't think that it's fair to say just because the United States states a claim. We might know that or have some evidence of that. We don't know if that would have resulted in the value of the property significantly being undermined. Well, I think the offer from Jim was ... The previous sale was $4 million. The Claybor purchase price was $4 million, and the offer from Jim was $3.8 something. I don't think that ... I think even on this evidence, there wasn't a major impact to value there from that. I still think under this court's case law, the correct line of draw is you need some assertion of title plus something else. You have the erection of a fence in the Manet case, which is a court for a claims case, or you have in Yuba Goldfields, you have ... That's a case where you're dealing with mineral rights, and the United States possessed the land that the mineral rights were on, and said you're prohibited from entering. The court said, well, you don't have to go actually be physically ejected. That's enough to say, well, you're prohibited from entering, but you don't have any sort of indication like that at all here from the facts. There's nothing on the ground. It's just my own life experiences, which are not dealing with exchanges of large parcels, but everybody, any one of us that buys a house or a condo, you have a title search, and everybody is assuming that this only goes through if there's no cloud on the title. If there's a cloud on the title, the transfer of the property is not going to go through, and it's going to be a big to-do, and it's going to undermine or obviate the sale. Why is this circumstance is not comparable to that kind of circumstance? I think what I would say is that whatever cloud on the title existed, existed long before the Fish and Wildlife Service sent the facts. All they did was restate the same claim they've had since 1903 from the Navy. If you're doing a title search, one of the things you're going to search for, regardless of whether the Fish and Wildlife Service ever sent a fact, is for any clouds you see the Federal Register notice. That was just the border along the sea and the gun mount, shortly after the property was acquired from the Spanish. I didn't see that that purported to change any of the private rights that had been vested and that were explicitly preserved after the United States treaty with Spain. I don't think that the facts did anything more than restate exactly what that claim has always been. Again, I've heard it to look at the language of the facts. All it says is the coastal strip and the gun mount site. It's the exact same claim. Arguably, the sellers would be under an obligation themselves to disclose this claim, which was known to their predecessors in 1987, the Court of Federal Claims found. The idea that there was any action here by the United States in sending a fact that did anything to change what the purchaser would have done, I think is incorrect. The claim existed. The plaintiffs knew about it in 1987. If they're going to sell their land and they know about a cloud on the title, I think that at least arguably they're under a good faith duty to disclose it. It was in a public document in a Federal Register notice. The idea that- Just to reiterate where we started, which is it's the government's position that the only quibble or argument with respect to title or anything with regard to this land is exclusively the gun mount and that peninsula. Yeah. At this point, yes. It did not involve anything, any other land. That's right. Yes, that's correct. We didn't assert error that the Court of Federal Claims found that it was broader, but that's the claim that we brought, yes. That's the claim the United States made to title, yes. Okay. Why don't we hear from- Okay. Thank you. Good morning. May it please the Court. Roberto Berrios, Falcón for the Apalese. First of all, Your Honors, I'm surprised to hear from the United States that they've abandoned their 10.01 acres claim of the peninsula. Where was the claim made? Okay, give us the specificity of where you concluded that that claim was made. The claim? The 10.01 for the first time? For all of the acres. Is the 10.01, is that the peninsula or-  Okay. Where is the evidence that that was the assertion they were making? Well, that assertion was first made in October 2010. And as we progressed and the negotiations to exchange land with the government failed, we had to bring this claim to the Court of Federal Claims. And at that point in time, we filed it in accordance to what they had actually asserted, which was the 2.25 acres, the maritime zone, and the other documents that were included in that communication from June 22, 2006 by the Fish and Wildlife Service. Do any of those other documents refer to the entire peninsula? 10.01 acres. That's what they refer to in the peninsula. The other documents do refer to the 10.01? Yes. Now tell me again which- The facts? Do you agree with your friend that the facts is limited to the gun mount and the little- Yes, but the facts includes certain documents. Okay. Can you point us in the record? Do we have that stuff in the record? Sure. I don't have the actual- I think it's like the third page in the facts. 3120? 3120. 3120. Again, we're talking about this facts sent in response to the briar's request. Right. And then in the documents that were filed in the Court of Federal Claims, the Fish and Wildlife Service in the United States made inconsistent claims at different times. First they- Let's start with the document though. Sure. Okay. What in the document tells us whether we're just talking about the gun mount or whether we're talking about more than that? Well, in the actual facts, they claim 2.25 acres as registered in the registered property. It's property 120. And they claim ownership- I'm sorry. You're going to have to show me. You don't have a copy of this with you? In the first page of the facts. 3115. Yeah, 3115. I'm sorry. 3115. 3115. Okay. Yeah. All right. It's the actual communication. But that facts in paragraph two of that facts refers to track 1E. That's the maritime zone, right? That's where they refer us to maritime zone. And then 1F is the gun mount. That's where they refer us to gun mount, right. And then is there anything else? Not in the 3115 page, no. So where does- I see on page 3120, there is what purports to be some sort of a chart showing the peninsula. Right. How does that relate to anything that was said in the facts? No, it's not related to what was said in the facts. It was just included with the facts. However, the position was taken by the government before and after trial that they also have a claim for 10.01 acres. They took that position verbally, orally? No, no. They took that position in writing. In writing where? Yeah, in the pleadings in the court of federal claims. Can you point us to something in the appendix? Let me see. Hold on. Let's see if I can have something in the appendix. I don't have the number in the appendix. Okay, but even if that's true, the trip wire here, the complaint here, is with respect to what the government was telling prospective buyers. That's where the injury- Sure, of course. What resulted in the injury. And if you're pointing us to everything that was said to the buyers, and it seems only to be a reference to the gun mount and that other strip, and not to the entire 10.01 acres, then isn't that a problem for this case going beyond that? When we started negotiating with the government, we took the position it was only the 2.25 acres, because we do admit that the government has rights to the maritime zone pursuant to state law. Because you ought to be happy what you heard today, right? Yeah. So we admit that they have the maritime zone rights. I mean, according to law. It's not actual ownership. However, in regards to the 2.25 acres, our research demonstrated, and the evidence proffered in the Court of Federal Claims demonstrated that the 2.25 acres, although we agree with the government that they own it, we prove that the actual gun mount is located somewhere else and not within the confines or the boundaries of the plaintiff's property. And that's what the Court of Federal Claims found. However, due to the inconsistent claims of the government, then the Court of Federal Claims had to find what any prudent person would do. I mean, that the actual claim was for the 10.01 acres. Because once we demonstrated to the government that it was somewhere else, they made the actual claim for the 10.01 acres. Well, if we were to conclude hypothetically an opinion like that you are time barred, and that's because we think the only claim at issue here and the only thing that's at stake and the only thing that the government has ever asserted a right to was this gun mount thing and this other thing and that the other portions of Parcel 4 the government hasn't asserted any right. It couldn't have and it wouldn't affect at least as of this time any ability for you to sell it. Wouldn't you be happy with that opinion? In a way you would lose the appeal but at least that would give you what you want, right? There's no dispute on that. You have no dispute on that that the government owns those portions of it. That the government owns which portions? Just the gun mount and that little... No, there has never been a dispute that they own the gun mount as of the location of the gun mount. That's a dispute. Because the government claims that the gun mount is located within the boundaries of the plaintiff's property. But that was the same dispute that was the subject of some correspondence and some interaction in 1987, correct? No. In 1987 the record demonstrates that the correspondence that was exchanged between the predecessor of one of the plaintiffs Dr. Katzen and the Fish and Wildlife Service asserts that there is a controversy similar to the one asserted by their neighbor. Right? By his neighbor. And if you look at the controversy asserted by the neighbor it's only as to the maritime zone or the establishment of the maritime zone or the high water mark. There is no mention of any other controversy. Furthermore... Was it their discussion about the markers and the various points on various maps? Right, yeah. But all those markers and points... The points relating to the gun mount. All those markers and points are on the coastline of the property on the maritime zone. There are none coming into inland of the property. So basically they delineate the maritime zone. There is at least one chart that showed some sort of a parallelogram or some polygon that showed property within the peninsula. You mean that polygon? Yes. The thing is that if you look at that polygon you look at it closely it's a really narrow piece of land as demonstrated in the depicted... It's not a strip of land along the coast. No, no, no. I'll get to that. It's a really narrow I guess little peninsula as depicted in that in that map or that drawing, right? The thing is that the strip of the maritime zone could very well become just one. See what I mean? I don't see that at all. My point is that I think you're making my point because that's what the parties were arguing back then. No, because no assertion of any separate and distinct property as to 2.25 acres located within the boundaries of the plaintiff's property was ever made to their beliefs. I don't understand. We started this discussion and I really do apologize because maybe it's me and not you. We started this discussion looking at the facts. The facts is key. It's like what was referred to in the facts? That ought to set the parameters for what is at stake in this case because it's your complaint about the level and the parameters of the government's interference. So if this, do we agree? What do you think this facts covers? It doesn't cover all of parcel four. It doesn't cover all of parcel five, right? No, no, no. Right. Basically, the assertion at that point which interfered with the sale was the ownership of maritime zone and the ownership of a 2.25 acre property that was sold in 1903 to the United States Navy and is registered in the registry of property on the property number 120 which we do not dispute. And that's all? It's just the maritime zone and the gun mount? In the facts, but they do include the 10.01 acre joint which later they state that they have a claim and now they abandon the claim, it seems. Well, where did they later say that was part of the claim? In the court of films, in the pleadings. But how can that be part of your claim because your claim is dealing to the extent you have one and that's a legal question is interference with your property right by the government going out and telling the purchasers that they have this claim and that's your claim. So if all they told the purchasers in response to their request only involved these small pieces in a way, what does it matter? I mean, I'm not happy I'm a little troubled by what representations would have been made at the trial and what consequences but why does that really matter? You mean? To your claim. Your claim has to be limited. Your claim is based entirely on the interference by communicating with the buyers that the government had some sort of title claim to certain aspects of the property. Right. How can the dispute go any farther than that? No, it went farther than that once we established that there was the location of the gun mount was not within the confines of the plaintiff's property. Then it became something else. Then it became a 10.01 acres claim. And those inconsistencies... Okay, that's what I don't understand. Can you give me a little more on that? Because I completely don't understand how the gun mount became 10.8 acres. We didn't understand it either. That's exactly the point. Can you point us to what went down? Who said what when? How did this become part of the debate? Well, in October I can't remember the appendix number but in October 2010 I was sent a fax from the solicitor's office and they claimed that they had reason to believe that they also owned the 10.01 acres. And after that in our complaint we included that actual... What was the date of that letter? Did you say? October 2010. And that was a fax? That was a fax. What was going on in that time frame? In June 9, 2010 the plaintiff sent a communication to the Fish and Wildlife Service stating that we had done extensive research all the way to the 1800s that demonstrated that the 2.25 acre gun mount was not located within the confines of the property.  that they surrender the claim and let us continue with our... for the sale of the property to other third parties and that would be it. However, that's when the government said that we didn't understand that they also were claiming the 10.01 acres. So are you saying that at that point when the government communicated to you that they were also claiming rights in the 10.01 acre peninsula that's another taking? A separate taking? Apart from the fax? Well, that's when we understood that the claim from the government was not just limited to the 2.25 acres now that they were claiming a 10 acre peninsula. But that didn't relate back to the fax. This was a separate communication. It did relate back to the fax in the sense that the communication from October 2010 included once again the 30... 3120? Penix 3120 which is the depiction of the 10.01 acre peninsula. I hate to interrupt your remark but I just wondered if the government has a citation in the appendix to this June 2010 letter communication. I don't have that handy. I'm not sure where it is. Or if it's in the appendix. All right. Let me just sort of move over a little. Sure. We're still talking the same thing. To the extent that your argument... Let's forget what we're talking... the parameters of the land we're talking about. Let's just talk about the communication by fax.         I don't think so. I don't think so. I don't think so. I don't think so. I don't think so. Sure. The problem with that assertion is that in the actual document that was sent by Mr. Colon even though the broker stated that he didn't have a problem the actual document, the offer stated that the actual parcel had to have a clear title. And that could not be offered. Especially to the part that Mr. Colon wanted which was the part that on the east side of the parcel which is basically the peninsula. So since we could not... Since we could not offer a clear title we could not sell it to him. That was his offer. He wanted it. He didn't want it to build but he wanted a clear title. But do you think the interference here to the extent there is a taking under some legal theory that would be limited... that would exclude the gun mount property and the other stuff we've been talking about because you acknowledge the government has a right to that. To the maritime zone. Yeah. The government has a right to the maritime zone. It doesn't have rights to the gun mount as located within the plaintiff's property because it's located somewhere else. That location is still being argued about? As to which side of... Which boundary the two acres are? Yeah, it was decided by the Court of Federal Claims in their opinion that the 2.25 acres is located to the north of the plaintiff's property in a separate and distinct property. Not... Nowhere near the plaintiff's property. And is the government appealing that? I mean, I guess we'll ask that. I don't think so but you can ask the government. Maybe I'm just overly optimistic or stupid but it seems to me that we really maybe really don't have a real dispute here. Well, the dispute was originally that the location of the gun mount and then the assertion of the 10.01 acres. As it kept going, we tried several times to come to an agreement with the government and we actually almost did. But... But at the end, it didn't happen. So that's why we're here today. I wonder if what's needed is some sort of quiet title action and actually under the laws of Puerto Rico to resolve the cloud which the Court of Federal Claims resolved. Well, I mean,  I mean, I'm not really sure if you have the same type of action. I mean, of course, you might. However, the... Well, nobody's filed a quiet title action. No, no. Just did both parties have the ability or is there a statute of limitations problem with that to argue? Well, the statute of limitations of the quiet title action I think was 12 years? Yes. And from memory, it seems to me that the quiet title action, the acquittal of the action actually is triggered by the publication in the register of the claim, if I remember correctly. However, it's not the same case in a takings action because in the takings action... So you're saying you would be barred under a quiet title? I think so because I mean, I think there's case law that states that the quiet title action commences to accrue once it's published in the Federal Register. However, that's a mere assertion of title which is not the case in this case. Here, we're talking about interference with the plaintiff's property rights to exercise the right to sell their property which they couldn't do without the claims of the government. Can I ask you, what if hypothetically when this buyer went to the government and solicited their views, the government just didn't respond? You know, the facts got lost in the paper. It would have sold probably. It would have sold probably because what the Register of Property in Puerto Rico... Wouldn't it come up... I mean, isn't there... In order to effectuate the sale, wouldn't somebody be doing some search of the records in terms of appropriate titles? Yes. So wouldn't this come up anyway? No. I'll take your word for it. I know. I'll explain to you why it wouldn't. In a title search, in this case, if you do a title search of the plaintiff's property, of Partial 4, it would come up free and clear. No, I'm not caught on title. There's another... You could do another search for Property 120 and that would come up free and clear. Since Property 120 was acquired in 1903 and it has never been sold or nothing has ever been done with it, it basically sits there as it did in 1903. If you lost track of that property once the other properties changed their configuration, then you don't know exactly where it is. You would need to track it down, which is what we did once the government claimed that that property was located within the boundaries of the plaintiff's property. When we ended our research, we found that the property was located somewhere else. That's what we communicated for the government. It wouldn't come up in the title search per se. I get your point. Thank you very much. Thank you. Thank you. Could you start by clearing up the question of the location of the gun mount? Because we were talking with you earlier about we all agree the gun mount is yours, but there seems to be a second dispute about the location. The Court of Federal Claims concluded that the gun mount should have actually been located in a property just to the north. We didn't appeal that conclusion. Do you have any dispute with that conclusion at this point? I think we do. I think we've maintained since 1903 that the gun mount site is on the peninsula. This is their takings claim, so it doesn't particularly matter where the gun mount site is as a title matter. We've located it and mapped it and surveyed it and everything else on the peninsula since 1903 and then 1985. Their claim is that those actions took the property and that's what we quarrel with, but where it should be located would have to be resolved somewhere else. Why hasn't where it's located been resolved? The Court of Federal Claims made a finding. You haven't appealed it to us. We're not going to dislodge that finding, so you're going to have a final opinion making that statement. You're suggesting that that doesn't matter. Perhaps it will, but the claim here is that our actions with respect to the peninsula took their property and that's what we've appealed. Those are the facts that matter for this appeal and the effect of that can be resolved there. I just want to make two very brief points. I hope I can maybe clear up some of the source of the confusion on the claim to the whole peninsula. I think what's going on here is, and I don't want to get into the substance of it because we didn't talk about it in my opening or in his response, but we have contended that they didn't prove their own ownership of the full peninsula because the survey and the quantity, the survey plot and the quantity don't show the peninsula. I think, and there's some evidence that the larger survey was bordered by property of the Navy. I think that's where that confusion comes from. That's really based on our assertion more that they haven't proven that they own the peninsula not so much that we own the whole thing which I think maybe is the source of some of the confusion there. And you think that's the reference to June 2010 or whatever communication? I don't remember that particular communication so I don't want to speculate about it but I think the way the case proceeded was this thing goes back more than 100 years. We've offered up everything we could find which included the map showing the 10 acres which included the Navy marker which included their surveys of their properties which don't show the peninsula and so I can understand why there's a lot of confusion. Do you think and I haven't consulted with my colleagues so is there some possibility of resolving this case now that it appears that some of what's going on here and that the government is really asserting there's been some misunderstandings? Would it behoove us to at least give the parties a precise time frame in which to resolve it? Do you think that based on what you've heard today that we don't want to waste everybody's time and our job is to decide this case and we're more than happy to do our job but I'm just wondering if you think there's a worthwhile settlement? I will say that we've engaged in extensive settlement discussions in the past. I don't think that anything I've heard today would lead me to believe that there would be some breakthrough on those but we're always willing to try again if the court thinks  be the best route. Picking up on what the Chief Judge just said, it seems to me that you don't seem to have a dispute with the finding that the gun mount is in plot 25 and not plot 24 and that there's no dispute about the maritime zone so it almost seems to me that the government would not be adverse to communicating to the property owner that the government makes no claim to your property except with respect to the maritime zone. And if that's the case, it would seem to me that that resolves it. It's difficult because I think what happens in the context of litigation and what they might want outside of the context of litigation may be different. The Fish and Wildlife Service has a wildlife refuge in this area that it has maintained since it acquired these properties since the 80s. I think they would want to maintain the wildlife refuge in that area and if we were going back to have more discussions with plants we would still be focused on the peninsula. I thought you had discussions about some of that stuff early on and they went well. They have resolved disputes with respect to other properties in ways that I think as time has worn out the Fish and Wildlife Service hasn't been happy with. I don't know how those disputes are going to be resolved. And they may not be resolved. There is still going to be this dispute out there. I think it was important for us both on the general principles of law and the particular facts here where we believe we shouldn't be required to pay for land that we have already acquired to bring this to the court. I alluded to this earlier on but I don't know what is confidential. There is a number we all have that you are not appealing the damages calculation. Does that coincide with the value of the entire property or is that because now we have narrowed it to being about small matters. That coincides with the value of the 10.01 acres which is a part of their entire property. Their entire property is much larger than just that 10 acre peninsula. Part of the problem here is the court of federal claims said we took the 10 acres but it is not a separately defined 10 acre property. There is no meets and bounds description of what we took. It is the 10 acre peninsula. There is still some confusion on that point to be resolved. You never appealed that. That is not going to be resolved. I think the court issued a 54B judgment. I think we can go back to the court of federal claims and say we need more assistance. I don't think that is the right result. I think the last point I want to make is that the record is full of maps as to the peninsula. The area as well as the uncertainty is to the gun mount and the maritime easement or whatever it is. You are telling us that none of that is clouded as well. The one map which is at 10.01 acres, it is not meets and bounds. There is no meets and bounds description. You don't know exactly where. We can take a guess as to one point of it. We don't know how to draw the line to get to the 10.01 acres. I do think that the court's intuition here that this is really a quiet title act dispute is the right one. I think what has happened here is they can't bring a quiet  act claim. They brought this claim on facts that would only give rise to a quiet title act. There is no action by the government. The government couldn't bring a quiet title action? The government could. We may need to do that should we win this case. I think they are time barred at this point, which is not unusual. They are not disputing that. Your friend is right. There is no action by the government to physically possess the property through the sending of a fax.   We thank both sides for the cases submitted. The next two cases for argument are 172244 and 17108. The next two cases for argument